UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| KENNETH L. BIESBOER, | ) | No. 08 B 35834 |
| | ) | |
| Debtor. | ) | Judge Carol A. Doyle |

**MEMORANDUM OPINION**

The debtor, Ken Biesboer, has moved for sanctions against his wife, Terri Biesboer, and her attorneys for violating the automatic stay and an injunction order by pursuing an action against him in their divorce case pending in state court. Terri filed a motion to amend the complaint in the divorce court to add four tort claims against Ken, Ken's sister and brother-in-law (Donna and Robert Fox), and five companies that were part of a family trucking business formerly owned by Ken, Donna and Robert. The Foxes have filed a similar motion to hold Terri and her counsel in contempt and for sanctions. Terri's actions violated both the automatic stay and the injunction order. Her counsel will be ordered to pay Ken and the Foxes for the damages caused by these violations.

**I.     Background**

Ken filed this chapter 11 case on December 31, 2008. Before he filed for bankruptcy, Terri had obtained standing from the divorce court to pursue a derivative shareholder action on behalf of Ken against Donna and Robert in state court. Ken had owned three companies jointly with Donna and Robert. In the derivative action, Terri accused Donna and Robert of diverting a significant amount of business from the principal corporation they owned jointly with Ken to two corporations owned solely by Donna. After filing for bankruptcy, Ken removed the

derivative action to the bankruptcy court and proposed a sale to the Foxes of the derivative action and Ken's shares in the companies he owned jointly with the Foxes. After resolving many motions and objections raised by Terri to the bankruptcy case itself, the removal of the derivative action, the sale and settlement of the derivative action, and the sale of Ken's interests in the relevant companies, the court approved the sale to the Foxes for $1.08 million on February 23, 2010. The order approving the sale included an injunction barring Terri from pursuing the Foxes or their companies in any action of any kind arising from the derivative action or the sale of Ken's interests in the various companies.

Terri initially filed a notice of appeal of the order approving the sale but then withdrew the appeal. Terri then filed a motion in the divorce court seeking leave to file a fourth amended complaint in that action. The proposed complaint contains one count for dissolution of marriage and four counts alleging various state court actions against Ken, the Foxes, and the Foxes' corporations seeking to recover Terri's "damages" arising from her inability to try the derivative action in divorce court. In each count, Terri alleges that she would have obtained a judgment over $7 million higher than the price the Foxes paid in the bankruptcy sale for the stock and derivative claim if she had been able to try the case in divorce court. She seeks that $7 million plus $3 million in additional damages and $3 million in punitive damages from Ken and the Foxes.

Ken then filed two separate motions in this court: a motion for sanctions against Terri and her counsel for violating the automatic stay, and a motion to enforce the injunction in the sale order and seek sanctions under 28 U.S.C. § 1927 for unreasonably multiplying the

proceedings. The Foxes filed a motion for a finding of contempt and sanctions against Terri and her counsel for violating the automatic stay, the injunction, and under § 1927.

**II.     Ken's Motion for Sanctions for Violation of the Automatic Stay**

Ken's first motion seeks sanctions against Terri and her counsel for attempting to file the Fourth Amended Complaint against him in violation of the automatic stay, 11 U.S.C. § 362. Section 362(a) prohibits any act to initiate or continue any action against the debtor that arose before the bankruptcy case was filed. 11 U.S.C. § 362(a)(1), (6). Section 362(k) creates a private right of action for debtors and their creditors to seek damages, including punitive damages, for willful violations of the automatic stay. *E.g., St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.2d 533, 538 (5th Cir. 2009); *In re T.J. Madison*, 249 B.R. 751, 757-58 (Bankr. N.D. Ill. 2000); *In re Prairie Trunk Ry.*, 112 B.R. 924, 928 (Bankr. N.D. Ill. 1990). Section 362(k)(1) provides that an individual injured by any willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A stay violation is willful when a party engages in an action that violates the stay with knowledge that a bankruptcy petition has been filed. *In re Radcliff*, 563 F.3d 627, 631 (7th Cir. 2009); *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989). The person violating the stay need not have had specific intent to violate the stay. *Goichman,* 875 F.2d at 227. Willfulness can be found even if the creditor believed himself justified in taking the actions found to violate the stay. *In re Sumpter*, 171 B.R. 835, 843 (Bankr. N.D. Ill. 1994).

Terri's motion to file the amended complaint was an intentional violation of the automatic stay.  The proposed Fourth Amended Complaint attached to the motion names Ken, the Foxes, and the companies involved in the derivative action as defendants.  In it, Terri seeks damages from Ken, Donna and Bob for, among other things, conspiring together to file the bankruptcy case to sell the derivative claim to the Foxes for an unfair price and deprive Terri of the allegedly huge amount of damages she would have won if the derivative action had been tried in the divorce court.  Terri alleges that Ken had no legitimate purpose for filing the bankruptcy case and that he acted in cahoots with Donna and Robert Fox to file for bankruptcy simply to defeat Terri's rights in the derivative action.  Terri alleges that Ken and the Foxes began meeting and conspiring to deprive Terri of her rights in November 2008, prior to the filing of the petition on December 31, 2008.  Thus, the complaint alleges claims against the debtor that are prohibited by the automatic stay.

Terri does not argue that § 362(a) does not apply to her attempt to file the Fourth Amended Complaint.  Instead, she contends that she believed that the agreed order lifting the stay regarding divorce court matters allowed her to pursue what she describes as state law claims against Ken and the other parties.  She asserts that, at a minimum, the stay-lift order creates an ambiguity that renders her violation of the stay non-willful.  The agreed stay-lift order, however, merely allows Ken and Terri to return to state court to permit the divorce court to divide their assets and dissolve their marriage.  It provides that the automatic stay is "partially modified" to allow the divorce court "to adjudicate and determine" Terri's and Ken's "respective interests and rights, pursuant to state law, in and to all marital and non-marital assets, property, liabilities and support obligations, domestic or otherwise, including but not limited to the Northern Trust

4

Accounts and the marital residence and to enter any orders relating to the foregoing and a judgment of dissolution of marriage." Order, April 29, 2010 at Par. 1 (Docket No. 466).

The stay-lift order did not permit Terri to file any state law tort claims against Ken and clearly was not intended to permit Terri to attempt to relitigate the derivative action in the state court. That claim was fully and finally resolved in the bankruptcy court through the sale of assets approved in February 2010 that Terri chose not to appeal. Terri points to no particular provision in the stay-lift order that supports her position. Her lead attorney, Gwendolyn Sterk, merely states in an affidavit that "it was believed that said modification of the automatic stay allowed for the pursuit of claims pursuant to state law." Although the stay-lift order refers to state law, that reference is clearly to the state divorce law for dividing the Biesboers' "respective interests ... in and to all marital and non-marital assets...." Thus, the order was intended to permit the state court to apply state divorce law to divide the Biesboers' assets and end their marriage. There is no basis in the order for concluding that Terri was free to pursue any non-divorce claims against Ken, let alone frivolous state-law tort claims arising from the derivative claim that are specifically barred by the injunction in the sale order. The court finds that Terri intentionally violated the automatic stay by attempting to file these claims against the debtor.

Terri also argues that she should not be held accountable for her actions because: (1) she did not actually file the amended complaint, she merely sought leave to file it; (2) Ken did not "attempt to settle" the matter with Terri before filing his motion for sanctions; and (3) she withdrew her motion after the court told Terri's counsel in court on May 25, 2010 that Terri was in violation of the sale order injunction and the automatic stay. None of these arguments is persuasive.

5

First, Terri filed the motion for leave to amend because leave was required. The filing of the motion for leave was an act to commence an action to recover on a claim against the debtor in violation of § 362(a)(1) and (6). Second, while it is always preferable for parties to attempt to resolve matters outside court before filing motions, § 362(k)(1) does not require the party seeking relief to give the violating party an opportunity to cure before sanctions can be sought. It should be noted that the Foxes' counsel sent Terri a letter on May 18, 2010 notifying her that the motion to amend violated the automatic stay and the injunction in the sale order, urging Terri to withdraw the motion, and expressing an intent to seek sanctions. Terri did nothing to withdraw the motion until after the court informed Terri's counsel on May 25 that the motion was a violation of the stay and the sale order. There is no reason to believe Terri would have acted differently if she had received a similar letter from Ken. Finally, Terri's decision to withdraw the motion to amend only after the court informed her that it violated the automatic stay and sale order injunction does not provide a basis for preventing Ken (or the Foxes) from recovering their damages caused by Terri's violations.

Ken is entitled to his actual damages, including his attorneys' fees, incurred in dealing with Terri's motion for leave to amend. He has sought attorneys' fees in the amount of $11,021 incurred by his bankruptcy counsel in pursuing the motion regarding the automatic stay and the motion to enforce the sale order. The amounts sought are reasonable, except that the court has deducted $500 for the effort devoted to the brief argument for sanctions under § 1927, which the court rejects below. Actual damages of $10, 521 will be awarded against Ms. Sterk, Terri's lead attorney. Terri is not an attorney and undoubtedly was following the advice of her lead counsel, Ms. Sterk, who has been the guiding force behind all of Terri's actions in this case.

The court also finds that an award of punitive damages is appropriate in this case. Ms. Sterk has previously demonstrated an unwillingness to accept the decisions of the bankruptcy court by repeatedly raising objections that had already been rejected by the court. The proposed amended complaint expresses an astonishing unwillingness to be bound by the decisions of this court. The causes of action alleged are not only frivolous, they constitute an obvious attempt to avoid the effect of bankruptcy court orders. This action appears to be a blatant attempt to force Ken and the Foxes to incur additional attorneys' fees to defend against claims that Ms. Sterk had to know were baseless. The court therefore concludes that punitive damages should be awarded in the amount of $5,000, payable by Ms. Sterk to Ken Biesboer.

### III.    Foxes' Motion for Finding of Contempt and Sanctions

The Foxes filed a motion for a finding of contempt and sanctions against Terri and her counsel for violating the automatic stay and the injunction in the sale order. They also seek sanctions under 28 U.S.C. § 1927 for Terri's alleged unreasonable multiplication of the proceedings in bankruptcy court.

#### A.    Violation of Injunction in Sale Order

As discussed above, Ken removed the derivative action from the state court in early 2009. Ken then compromised and sold the derivative action and his shares in the jointly owned corporations to the Foxes. After a long and acrimonious battle between the Foxes and Terri that culminated in a 3-day evidentiary hearing on the motion to approve the settlement and sale, the court eventually approved the sale to the Foxes for $1.08 million. During the hearing to approve the sale, Ken's counsel proposed an order for entry by the court. Terri's counsel, Ms. LoGiudice

(Ms. Sterk's associate), stated that Terri had many objections to the proposed order so the court permitted Ms. LoGiudice to go through each provision of the proposed sale order and state her objection. The court sustained a few of the objections, changed the language of some provisions of the proposed order, and overruled the remainder of the objections. Because of this process, there is no doubt that Terri's counsel was fully aware of each provision in the sale order entered by the court, including the injunction provision.

Paragraph 8 of the Sale Order contains an injunction barring Terri from pursuing any claim arising in any way from the derivative action or the sale of Ken's stock to the Foxes. It provides that "all persons and entities, including but not limited to TB [Terri Biesboer]" holding "any Interests of any kind or nature whatsoever in or against the Debtor or the Sale Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, The Sale Assets, or the transfer of the Sale Assets to the Fox Parties hereby are forever barred, estopped, and permanently enjoined from asserting against (i) the Fox Parties, their heirs, successors or assigns, (ii) the Brites Corporations, their parents, affiliates or subsidiaries, their successors or assigns, (iii) the property of the Fox Parties and the Brites Corporations, or (iv) the sale assets, such persons' or entities' lien, claims or other Interests, pursuant to any legal theory or equitable theory whatsoever." Order dated Feb. 23, 2010 (Docket

No. 407), Par. 8.[1]  The "Sale Assets" are defined as the derivative claim and Ken's equity interests in jointly owned corporations. *Id.* at Par. L, N.

Thus, the sale order enjoined Terri from pursuing any action of any kind under any theory against the Foxes, their companies or other property related in any way to or arising from the derivative claim.  Terri's proposed Fourth Amended Complaint arises directly from the derivative claim.  All four counts allege damages based on the judgment that Terri alleges she would have obtained had the derivative action been tried in the divorce court.  Count II is a claim for tortious interference against Ken and the Foxes alleging that they interfered with her expectation that she would obtain a judgment in the amount of $7,331,421 if the derivative action had been tried in the divorce court.  She seeks damages in the amount of $7.3 million plus $3 million in "personal damages."  Count III is a claim for constructive fraud that alleges that the Foxes exercised undue influence over Ken during the events leading up to the sale of the Brites Entities and disposal of the shareholder derivative claims, resulting in harm to Terri in an amount exceeding $3 million plus the $7.3 million she would have recovered if the derivative claim had been tried in the divorce court.  Count IV alleges a claim for unjust enrichment.  Terri claims that the fair value of Ken's interest in the Brites Entities and the shareholder derivative claims was in excess of $8 million and that, because the Foxes paid $1.08 million, they were unjustly enriched resulting in damages to Terri in the amount of $7.3 million plus attorneys' fees and costs.  Count V is a claim for conspiracy based on essentially the same allegations and claiming

---

[1] Paragraph 13 of the Sale Order also provides that "all Interests of any kind or nature whatsoever existing as to the Sale Assets prior to the Closing have been unconditionally released, discharged and terminated as to the Sale Assets, with such Interest to attach to the proceeds of Sale."

damages of $7.3 million plus attorneys' fees and costs, $3 million in compensatory and incidental damages, and $3 million in punitive damages. Throughout the complaint, Terri makes allegations relating to arguments she made in the bankruptcy case that were rejected by the bankruptcy court, including that the case was filed in bad faith, the sale was proposed in bad faith, the process was unfair, the sale price was too low, etc.

Thus, the gist of all four new causes of action in the proposed amended complaint is that the Foxes and Ken should be held liable for the amount Terri would have gotten if the derivative action had been tried in state court instead of being compromised and sold in the bankruptcy case. Each new count falls squarely within the scope of the injunction in the sale order because it arises from the derivative action.

To hold a party in contempt, the movant must show by clear and convincing evidence that: (1) a valid order existed, (2) the defendants had knowledge of the order, and (3) the defendants disobeyed the order. *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3rd Cir. 1995). There is no doubt that this test has been met. The injunction order was in full force and effect when Terri filed her motion to amend, Terri and her counsel were undeniably aware of it, and they violated the direct prohibition against litigating any claim of any kind arising from the derivative action by attempting to prosecute the Fourth Amended Complaint.

The only defense Terri raises to a finding of contempt is that she thought that the order modifying the automatic stay to allow the divorce court to divide the Biesboers' property and finalize the divorce permitted Terri to file state law claims against Ken. This was an unpersuasive argument in response to the motion that she violated the automatic stay. It provides absolutely no defense to a finding of contempt for violating the injunction. Terri does

not point to any provision in the stay-lift order that could conceivably be interpreted to modify the very clear and specific injunction in the sale order. The stay-lift order cannot reasonably be interpreted to permit Terri to file the claims in her Fourth Amended Complaint.

The fact that the proposed claims were all frivolous does not detract from the seriousness of this violation of the injunction. Terri was a highly active participant in every matter in the bankruptcy court. She tried at every opportunity to stop the sale and settlement of the derivative action in the bankruptcy court so she could wrest control of it back from the debtor and try it in the state court. This amended complaint is a continuation in state court of Terri's effort to regain control of the derivative action. The tort gloss Terri placed on the claims cannot mask the obvious - Terri was seeking the relitigate the derivative action in state court to defeat the finality of the bankruptcy court orders. Her pursuit of the Fourth Amended Complaint is a clear and intentional violation of the injunction in the sale order that warrants a finding that Terri and her counsel are in contempt of court and the award of damages to the Foxes and their corporations.

### B.   Violation of Stay

The Foxes also seek damages for Terri's violation of the automatic stay. The Foxes are pre-petition creditors of the debtor and therefore have standing to bring an action for damages for a violation of the automatic stay. *E.g., St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.2d 533, 538 (5th Cir. 2009). This is true even though their grievance here is derived from their status as a purchaser of assets, not simply as a pre-petition creditor. *E.g., Homer Nat. Bank v. Namie*, 96 B.R. 652, 655-56 (W.D. La. 1989); *Prairie Trunk Ry.*, 112 B.R. at 930.

In this case, however, the damages that the Foxes and their companies suffered flowed from the attempt to sue them, not directly from the violation of the automatic stay, which

prohibits actions to collect debts against *the debtor*.  While the claims against the Foxes and Ken are intertwined and include many allegations of collusion and conspiracy, since the Foxes will be compensated for their actual damages that flowed from Terri's violation of the injunction, there is no need to impose additional damages for violation of the automatic stay.

      **C.**     **Sanctions under § 1927**

Finally, the Foxes seek sanctions against Terri and her counsel under 28 U.S.C. § 1927 for an alleged pattern of unreasonable and vexatious multiplication of the proceedings throughout the bankruptcy case.  Section 1927 allows a court to award fees and costs against attorneys who abuse the litigation process in an objectively unreasonable manner, ie, "where a claim is without plausible factual or legal basis and lacking in justification."  *In re Volpert*, 177 B.R. 81, 88-89 (Bankr. N.D. Ill. 1995).  As a punitive measure, however, it should be construed strictly and imposed only "to penalize attorneys who engage in dilatory conduct."  *Harriston v. Chicago Tribune Co.*, 136 F.R.D. 482, 485 (N.D. Ill. 1991).

The motion and reply catalog the many instances of repetitive and meritless issues raised by Terri and her counsel during the bankruptcy proceeding.  They contend that this last effort by Terri makes abundantly clear that Terri will stop at nothing, not even a final adjudication that she chose not to appeal, in her dogged pursuit of the now non-existent derivative claim.

The court is cognizant of the time and effort wasted by Terri's often ill-conceived motions and objections, and has occasionally commented on them in court in an attempt to streamline the proceedings and save costs for all parties, including Terri.  The court has also recognized, however, that buried within a mass of untenable arguments, the court usually found some point that was worth considering.  In fact, the court ultimately ruled in Terri's favor on

some issues after the evidentiary hearing regarding the sale. The court denied the debtor's motion to sell the stock and derivative claim at the proposed price and approved the sale only after the Foxes increased the purchase price. Thus, not all of Terri's arguments were without merit.

There is no doubt that Terri's counsel is highly litigious and prefers to fight rather than try to reach a reasonable resolution outside of court, even when such a resolution would benefit her own client. It also appears, however, that part of the problem was a lack of familiarity with bankruptcy law, a complex area of the law in which issues of importance are often decided quickly. Thus, the motions and objections raising untenable issues did not necessarily reflect an intent to vexatiously multiply the proceedings. While Terri's current attempt to circumvent the bankruptcy process is clearly sanctionable for the reasons discussed above, it is not sufficient to cause the court to conclude that all of Terri's counsel's previous actions in the case were undertaken to unreasonably multiply the proceedings for purposes of § 1927. The court therefore denies the request for sanctions under § 1927.

### D. Amount of Damages for Violation of Injunction

The Foxes seek to recover from Terri and her counsel the attorneys' fees they spent in responding to Terri's violation of the injunction order. They submitted bills from the Foxes' counsel in the bankruptcy court (the Adelman and Gettleman firm), the Foxes counsel in the divorce court (the Krockey, Cernugel firm), and separate counsel for the Foxes' corporations in the divorce court (which the divorce court apparently required them to engage). Because Terri's counsel, Ms. Sterk, is responsible for the violation of the injunction, she will be held liable for the Foxes' attorneys' fees as follows:

### -Adelman and Gettleman Firm:

The Foxes seek attorneys' fees in the amount of $20,512 for responding to the attempt to file the tort claims against the Foxes. The court has deducted time (approximately $4,000) that was spent focusing on the attempt to impose sanctions under § 1927, excluding time for preparing the extensive background section of the motion and the long chart attached in the reply summarizing the documents filed by Terri over the course of the bankruptcy case, review of transcripts for quotes for the brief, and related time entries. Ms. Sterk must pay the firm of Adelman and Gettleman, Ltd. the sum of $16,512.

### -Krockey, Cernugel Firm:

The Foxes also seek $3,450 in attorneys' fees for their counsel in the divorce case. The fees sought are reasonable. Ms. Sterk must pay Crockey, Cernugel, Cowgill & Clark, Ltd. the sum of $3,450.

### -Jacquays Firm

Finally, the Foxes seek $4,417.68 in attorneys' fees for the counsel they were required to hire to represent their corporations in the divorce case. The fee statement submitted by the Jacquays firm includes time for dealing with the third amended complaint in the divorce action, which is not the subject of the sanctions motion. The court has therefore deducted from the amount requested the fees for time spent in April 2010 in the amount of $1,287.50. Ms. Sterk must pay $3,030.18 to the Law Offices of Edward R. Jaquays.

**IV.     Ken's Motion to Enforce Sale Order**

Ken also filed a motion to enforce the sale order and for sanctions under 28 U.S.C. § 1927.  Ken seeks the same damages for violation of the stay and the violation of the sale order.  As discussed above, Terri is in contempt of court for intentionally violating the injunction in the sale order.  Ken is entitled to his attorneys' fees incurred in connection with his motion to enforce the injunction.  That amount is included in the $11,061 in fees sought in connection with both motions discussed above with respect to Ken's motion for violation of the automatic stay.  The request for sanctions under § 1927 is denied for the reasons stated above with respect to the Foxes' request.

**CONCLUSION**

Ken's motion for sanctions for violation of the automatic stay will be granted and his motion to enforce the sale order will be granted in part and denied in part.  Attorney Gwendolyn Sterk is found to have intentionally violated the automatic stay and is in contempt of court for violating the sale order.  Ms. Sterk will be directed to pay the firm of Gregory P. Stern, P.C. the sum of $10,521 and to pay Kenneth Biesboer the sum of $5,000.  The request in the motion to enforce the sale order for damages under 28 U.S.C. § 1927 is denied.

The Foxes' motion to hold Terri and her counsel in contempt and for other sanctions will be granted in part and denied in part.  Ms. Sterk is found to be in contempt for violating the sale order.  Ms. Sterk will be directed to pay the firm of Adelman and Gettleman, Ltd. the sum of $16,512, to pay the firm of Krockey, Cernugel, Cowgill & Clark, Ltd. the sum of $3,450, and to pay the Law Offices of Edward R. Jaquays the sum of $3,030.18.  The Foxes' request for

damages under § 1927 is denied.  All amounts owed by Ms. Sterk shall be paid by August 31, 2010.

Dated:   July 27, 2010

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge